UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

THOMAS TIMOTHY TRETTIS IV,

     Plaintiff,

v.                            Case No.:  2:23-cv-638-DNF

COMMISSIONER OF SOCIAL
SECURITY,

     Defendant.

_____

## OPINION AND ORDER

Plaintiff Thomas Timothy Trettis IV seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying his claim for a period of disability and disability insurance benefits and for supplemental security income benefits. The Commissioner filed the Transcript of the proceedings ("Tr." followed by the appropriate page number), and the parties filed legal memoranda setting forth their positions. As explained below, the decision of the Commissioner is **AFFIRMED** under § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

## I.   Social Security Act Eligibility, Standard of Review, Procedural History, and the ALJ's Decision

### A.   Social Security Eligibility

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). The impairment must be severe, making the claimant unable to do his previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505–404.1511, 416.905–416.911.

### B.   Standard of Review

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion. Even if the evidence preponderated against the Commissioner's findings, we must affirm if the decision reached is supported by substantial evidence." *Crawford v. Comm'r*, 363 F.3d 1155, 1158 (11th Cir. 2004). In conducting this review, this Court may not reweigh the evidence or substitute its judgment for that of the ALJ, but must consider the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Winschel v.*

*Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citation omitted); *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). Unlike findings of fact, the Commissioner's conclusions of law are not presumed valid and are reviewed under a de novo standard. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994); *Maldonado v. Comm'r of Soc. Sec.*, No. 20-14331, 2021 WL 2838362, at *2 (11th Cir. July 8, 2021); *Martin*, 894 F.2d at 1529. "The [Commissioner's] failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal." *Keeton*, 21 F.3d at 1066.

The ALJ must follow five steps in evaluating a claim of disability. 20 C.F.R. §§ 404.1520, 416.920. At the first step, the ALJ must determine whether the claimant is currently engaged in substantial gainful employment. 20 C.F.R. § 404.1520(a)(4)(i), (b); 20 C.F.R. § 416.920(a)(4)(i), (b). At step two, the ALJ must determine whether the impairment or combination of impairments from which the claimant allegedly suffers is "severe." 20 C.F.R. § 404.1520(a)(4)(ii), (c); 20 C.F.R. § 416.920(a)(4)(ii), (c). At step three, the ALJ must decide whether the claimant's severe impairments meet or medically equal a listed impairment. 20 C.F.R. § 404.1520(a)(4)(iii), (d); 20 C.F.R. § 416.920(a)(4)(iii), (d). If the ALJ finds the claimant's severe impairments do not meet or medically equal a listed impairment,

then the ALJ must determine whether the claimant has the residual functional capacity ("RFC") to perform his past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv), (e)–(f); 20 C.F.R. § 416.920(a)(4)(iv), (e)–(f).

If the claimant cannot perform his past relevant work, the ALJ must determine at step five whether the claimant's RFC permits him to perform other work that exists in the national economy. 20 C.F.R. § 404.1520(a)(4)(v), (g); 20 C.F.R. § 416.920(a)(4)(v), (g). At the fifth step, there are two ways in which the ALJ may establish whether the claimant is capable of performing other work available in the national economy. The first is by applying the Medical Vocational Guidelines, and the second is by the use of a vocational expert. *Phillips v. Barnhart*, 357 F.3d 1232, 1239-40 (11th Cir. 2004); *Atha v. Comm'r, Soc. Sec. Admin.*, 616 F. App'x 931, 933 (11th Cir. 2015).

The claimant bears the burden of proof through step four. *Atha*, 616 F. App'x at 933. If the claimant meets this burden, then the burden temporarily shifts to the Commissioner to establish the fifth step. *Id.*; 20 C.F.R. § 404.1520(a)(4)(v), (g); 20 C.F.R. § 416.920(a)(4)(v), (g). If the Commissioner presents evidence of other work that exists in significant numbers in the national economy that the claimant is able to perform, only then does the burden shift back to the claimant to prove he is unable to perform these jobs. *Atha*, 616 F. App'x at 993.

## C.     Procedural History

On August 18, 2017, Plaintiff applied for a period of disability and disability insurance benefits and for supplemental security income, alleging disability beginning on October 1, 2014. (Tr. 123, 124, 324-336). The applications were denied initially and on reconsideration. (Tr. 123, 124, 165, 166). Plaintiff requested a hearing and on July 11, 2022, a hearing was held before Administrative Law Judge Maria Northington ("ALJ"). (Tr. 49-92).[1] On September 13, 2022, the ALJ entered a decision finding Plaintiff not under a disability from October 1, 2014, through the date of the decision. (Tr. 18-39).

Plaintiff requested review of the decision, but the Appeals Council denied Plaintiff's request on January 27, 2023. (Tr. 4-8). Plaintiff began this action by Complaint (Doc. 1) filed on August 18, 2023, and the case is ripe for review. The parties consented to proceed before a United States Magistrate Judge for all proceedings. (Doc. 14).

## D.     Summary of ALJ's Decision

In this matter, the ALJ found Plaintiff met the insured status requirements of the Social Security Act through December 31, 2017. (Tr. 22). At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial

---

[1]  A prior hearing was held on November 1, 2021. (Tr. 93-98). Based on Plaintiff failing to appear, the hearing was rescheduled to July 11, 2022.

gainful activity since October 1, 2014, the alleged onset date. (Tr. 23). The ALJ

noted that Plaintiff worked after the alleged disability onset date, but this work

activity did not rise to the level of substantial gainful employment. (Tr. 23). At step

two, the ALJ found that Plaintiff had the following severe impairments:

"schizophrenia, amphetamine use disorder, alcohol use disorder; cannabis use

disorder; and morbid obesity." (Tr. 23). At step three, the ALJ found that Plaintiff

did not have an impairment or combination of impairments that meets or medically

equals the severity of any of the listed impairments in 20 C.F.R. Part 404, Subpart

P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d),

416.925, and 416.926). (Tr. 23).

Before proceeding to step four, the ALJ found that Plaintiff had the following

RFC:

> The claimant has no exertional limitations, which implicitly
> includes the performance of medium, light and sedentary work
> as defined by the regulations. There are no limits for sitting in
> an eight-hour workday with standing and/or walking for up to
> six hours in an eight-hour workday. The claimant is capable of
> performing all postural functions with the exception of no
> crawling and no climbing of ladders/ropes/scaffolds.
> Secondary to morbid obesity and in the course of work, the
> claimant is to have no exposure to extremes of heat and
> humidity. Secondary to his mental impairments, he retains the
> capacity to understand, remember, and carry-out simple
> instructions and perform simple routine tasks as consistent
> with unskilled work. In the course of work, the claimant is to
> have no in-person contact with the public with the exception
> that incidental contact and telephonic contact. The claimant is
> to have only occasional contact with coworkers and

> supervisors, occasional being defined as occasional interaction
> and coordination, but not necessarily proximity to the same.

(Tr. 26).

At step four, the ALJ determined that Plaintiff is unable to perform his past relevant work as a home health aide or a home attendant. (Tr. 37). At step five, the ALJ found that considering Plaintiff's age (29 years old on the alleged disability onset date), education (at least high school), work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. (Tr. 37). Specifically, the vocational expert testified that a person with Plaintiff's limitations could perform such occupations as:

(1) Hand-packager, DOT 559.687-074[2], light, SVP 2

(2) Marker, DOT 209.587-034, light, SVP 2

(3) Inserter, DOT 713.687-026, sedentary, SVP 2

(4) Bonding worker, DOT 726.685-066, sedentary, SVP 2

(Tr. 38). The ALJ concluded that Plaintiff had not been under a disability from October 1, 2014, through the date of the decision. (Tr. 39).

## II.   Analysis

On appeal, Plaintiff raises five issues:

---

[2] DOT refers to the *Dictionary of Occupational Titles*.

(1)     Whether the ALJ erred in consideration of the State agency medical providers' opinions related to understanding and remembering detailed instructions;

(2)     Whether the ALJ erred in the RFC assessment by failing to include additional mental limitations associated with adapting and managing oneself;

(3)     Whether the ALJ properly considered consultative examiner, Dr. Pellegrini's opinion;

(4)     Whether the ALJ's decision was supported by substantial evidence given the State agency limitation to a very short, on-the-job training period, which equals an SVP 1; and

(5)     Whether the vocational expert's testimony on job numbers provided substantial evidence to support the ALJ's decision.

(Doc. 16, p. 1-2).

### A.     State Agency Medical Providers' Opinions

Plaintiff argues that the ALJ did not address a portion of the opinions of State agency psychological consultants, Lynda Walls, Ph.D. and Bruce McIntyre, Ph.D. (Doc. 16, p. 6). Specifically, Plaintiff argues that the State agency psychological consultants found Plaintiff had moderate limitations in the ability to understand and remember detailed instructions, but the ALJ did not make such a finding in the RFC assessment or explain why such a finding was not included. (Doc. 16, p. 6-8). These arguments are not unavailing.

An individual's RFC is his ability to do physical and mental work activities on a sustained basis despite limitations secondary to his established impairments.

*Delker v. Comm'r of Soc. Sec.*, 658 F. Supp. 2d 1340, 1364 (M.D. Fla. 2009). In determining a claimant's RFC, the ALJ must consider all relevant evidence including non-severe impairments. *Barrio v. Comm'r of Soc. Sec.*, 394 F. App'x 635, 637 (11th Cir. 2010). Furthermore, the ALJ must "'scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts.'" *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015) (quoting *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir.1981)). In other words, ALJs "are by law investigators of the facts and are tasked not only with the obligation to consider the reasons offered by both sides, but also with actively developing the record in the case." *Id*.

On March 7, 2018, and January 8, 2021, Dr. Walls and Dr. McIntyre respectively completed Medically Determinable Impairments and Severity forms. (Tr. 134-41). As far as Plaintiff's mental residual functional capacity, both Dr. Walls and Dr. McIntyre found, among other things, that Plaintiff was moderately limited in the ability to understand and remember detailed instructions. (Tr. 106, 139). Both doctors explained, "Func. rpts and objective observations by medical source indicate capacity to understand and retain simple instructions." (Tr. 106, 139). Later, both doctors also found Plaintiff was not significantly limited in the ability to carry out detailed instructions. (Tr. 106, 139).

In the decision, the ALJ discussed the State agency psychological consultants opinions and found them persuasive. (Tr. 34). Plaintiff argues that even though the

ALJ found these opinions persuasive, she did not address their findings about moderate limitation in the ability to understand and remember detailed instructions and did not include this limitation in the RFC assessment. Both doctors, however, not only found Plaintiff to have moderate limitations in understanding and remembering detailed instructions, but they also included further explanations. They both found that while Plaintiff would have moderate limitations, Plaintiff retained the capacity to understand and retain simple instructions. (Tr. 106, 139). The RFC assessment reflected this limitation by including a limitation that Plaintiff retained the capacity to understand, remember, and carry-out simple instructions and perform simple routine tasks as consistent with unskilled work. (Tr. 26). Thus, the ALJ adopted the limitations assessed by both Drs. Walls and McIntyre. The ALJ also included these limitations in the hypothetical to the vocational expert, who found an individual with these limitations capable of performing the jobs of hand-packager, marker, inserter, and bonding worker. (Tr. 87-88).

Finally, Plaintiff argues that a moderate limitation in the ability to understand and remember detailed instructions conflicts with the listed jobs (except for the inserter job) that require a reasoning level of 2. (Doc. 16, p. 7). The Eleventh Circuit decided that an RFC limitation to simple, routine, and repetitive work does not conflict with a job that requires a reasoning level of 2. *See Valdez v. Comm'r of Soc. Sec.*, 808 F. App'x 1005, 1009 (11th Cir. 2020) (finding that the plaintiff did not

argue that the jobs with a level 2 reasoning level conflicted with simple, routine, and repetitive work, and the Court found they do not.); *Buckwalter v. Acting Comm'r of Soc. Sec.*, 5 F.4th 1315, 1323 (11th Cir. 2021). Substantial evidence supports the ALJ's consideration of the State agency psychological consultants' opinions and the ALJ's RFC assessment.

### B.    RFC Assessment

Plaintiff contends that the ALJ found him to have mild limitations in adapting and managing himself, and argues that the ALJ included no mental limitations in the RFC assessment and in the hypothetical to the vocational expert regarding these limitations. (Doc. 16, p. 10). The Court disagrees.

The same legal authority about RFC assessments that applied to the first issue also applies here. At step three, the ALJ found Plaintiff experienced mild limitations in adapting or managing oneself. (Tr. 25). The ALJ recounted that Plaintiff alleged paranoia, exhaustion, auditory and visual hallucinations, memory difficulties, difficulties tending to his personal care needs, difficulties following instructions, and difficulties handling changes in routine. (Tr. 25). The ALJ contrasted these allegations with Plaintiff activities, such as renting a room, preparing meals, performing household chores, and using public transportation. (Tr. 25). The ALJ summarized the evidence by stating that "when the claimant is compliant with his

medication(s), his symptoms are controlled, and he can independently perform his activities of daily living." (Tr. 25).

Plaintiff claims that the ALJ did not provide sufficient reasons for a reviewing court to determine whether the proper legal analysis was conducted, relying on *Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1251 (11th Cir. 2019). (Doc. 18, p. 13). In *Schink*, the administrative law judge only discussed Schink's physical impairments in the RFC assessment, and only mentioned the plaintiff had bipolar disorder with no real discussion of how this mental condition affected the plaintiff's RFC. *Id.* at 1269. The Eleventh Circuit remanded *Schink* in part because whether severe or not, the administrative law judge was required to consider a plaintiff's mental impairments in the RFC assessment, but failed to do so. *Id.* at 1251, 1269. *Schink* is easily distinguishable from this case.

By contrast here, the ALJ summarized the voluntary and involuntary psychiatric hospitalizations, mental health assessments, and mental statuses in 2015 and 2016. (Tr. 27-28). The ALJ found that Plaintiff's mental health stabilized when he took his prescribed medications. (Tr. 28). On the one hand, in May and September 2019, the ALJ noted that Plaintiff was asymptomatic and mentally stable when on medication. (Tr. 30). He was clean, neat, well-groom, in good spirits, and had a positive attitude and outlook. (Tr. 30). On the other hand, the ALJ noted that in August 2020, Plaintiff was in jail and was anxious, tearful, and disheveled. (Tr. 30).

Plaintiff reported he was not on any medication. (Tr. 30). Likewise at a December 2020 psychological examination, Plaintiff had only taken medications given to him by a family member and exhibited hypomania and hyper religious verbalizations, and appeared disorganized. (Tr. 30). As the ALJ noted, the pattern emerged that when Plaintiff was not taking his medications, as in December 2021, and January 2022, he presented as disheveled, poorly groomed, confused, and was responding to internal stimuli. (Tr. 31). But when he took his medications, his mental health stabilized and he could interact with his roommates, shower daily, was cooperative, and oriented in all spheres. (Tr. 31-32). The ALJ summarized the evidence: "[t]here is evidence of multiple inpatient hospitalizations to treat the claimant's mental health symptoms. There is also evidence of abnormal mental status evaluation during such periods. However, the sum of the evidence shows that when the claimant is compliant with his medication(s), his symptoms are controlled, and he can independently perform his activities of daily living." (Tr. 33). The ALJ thoroughly considered Plaintiff's mental impairments, including those related to adapting or managing oneself and found that a mild impairment in this area did not cause any additional limitations other than those assessed in the RFC.

Moreover, in finding at most mild impairments, other courts have found the ALJ was not required to include any mental limitations in the RFC. *See Faircloth v. Comm'r of Soc. Sec.*, No. 6:21-cv-782-EJK, 2022 WL 2901218, at *2 (M.D. Fla.

July 22, 2022) ("Notably, an ALJ is not required to include mental limitations in the RFC finding merely because he identified mild mental limitations in the PRT criteria.") (citing *Williams v. Soc. Sec. Admin.*, 661 F. App'x 977, 979-80 (11th Cir. 2016) (per curiam)). Here, the ALJ considered all of Plaintiff's impairments, including any mental limitations, in assessing Plaintiff's RFC. For these reasons, substantial evidence supports the ALJ's RFC assessment and hypothetical to the vocational expert.[3]

### C.    Andrea Pellegrini, Psy.D.'s Opinion

Plaintiff argues that the ALJ did not properly assess the opinion of consultative examiner, Dr. Pellegrini. (Doc. 16, p. 12). Plaintiff asserts that the ALJ's reason to find Dr. Pellegrini's opinion unpersuasive – that Plaintiff was not taking his prescribed medications at the time of the exam – was insufficient because the ALJ failed to also consider whether taking these medications would restore Plaintiff's ability to work. (Doc. 16, p. 13). Plaintiff's argument is misguided.

The regulations for disability cases filed after March 27, 2017 – such as this one – changed and an ALJ no longer defers or gives any specific evidentiary weight

---

[3] Plaintiff also argues that the ALJ misstated Plaintiff's activities of daily living when stating that Plaintiff performs household chores approximately four hours daily. (Doc. 16, p. 11). In assessing the RFC, the ALJ considered Plaintiff's activities of daily living, but also considered all of the medical evidence and other evidence of record. If any error occurred, it was harmless. *See Epps v. Soc. Sec. Admin., Comm'r*, No. 22-13674, 2024 WL 20837, at *4 (11th Cir. Jan. 2, 2024) ("To the extent the ALJ commits an error, we will not reverse if the error did not affect the ALJ's ultimate determination.") (citing *Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983)).

to a medical opinion. 20 C.F.R. § 404.1520c(a), 20 C.F.R. § 416.920c(a). Thus, an ALJ no longer uses the term "treating source" and does not defer or give specific evidentiary weight, including controlling weight, to any medical opinion or prior administrative medical finding. *Torres v. Comm'r of Soc. Sec.*, No. 6:19-cv-1662-ORL-PDB, 2020 WL 5810273, at *2 (M.D. Fla. Sept. 30, 2020) (citing 20 C.F.R. § 404.1520c(a)).

Instead, an ALJ assesses the persuasiveness of a medical source's opinions given these five factors, with the first two being the most important: (1) supportability; (2) consistency; (3) relationship with the claimant, including the length, frequency, and purpose of the examining and any treatment relationship; (4) specialization; and (5) other factors, such as the source's familiarity with other evidence concerning the claim, that tend to support or contradict the medical opinion. 20 C.F.R. § 404.1520c(a)-(c); 20 C.F.R. § 416.920c(a)-(c). An ALJ may but is not required to explain how he considers factors other than supportability and consistency, unless two or more opinions are equally persuasive on the same issue. 20 C.F.R. § 404.1520c(b)(2); 20 C.F.R. § 416.920c(b)(2).

For supportability, the revised rules provide: "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will

be." 20 C.F.R. § 404.1520c(c)(1); 20 C.F.R. § 416.920c(c)(1). For consistency, the revised rules provide: "The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(2); 20 C.F.R. § 416.920c(c)(2).

The new regulations also differentiate between medical opinions and "other medical evidence." 20 C.F.R. §§ 404.1513(a)(2)-(3), 416.913(a)(2)-(3). "A medical opinion is a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions" in the abilities listed in paragraphs (a)(2)(i) through (iv). 20 C.F.R. §§ 404.1513(a)(2), 416.913(a)(2). "Other medical evidence is evidence from a medical source that is not objective medical evidence or a medical opinion, including judgments about the nature and severity of your impairments, your medical history, clinical findings, diagnosis, treatment prescribed with response, or prognosis." 20 C.F.R. §§ 404.1513(a)(3), 416.913(a)(3).

On December 23, 2020, Dr. Pellegrini conducted a psychological examination of Plaintiff and completed a Psychological Report. (Tr. 693-698). In the decision, the ALJ thoroughly summarized Dr. Pellegrini's findings, both the generally normal

and the abnormal findings. (Tr. 30). The ALJ then found Dr. Pellegrini's opinion unpersuasive:

> Upon consultative evaluation, Dr. Pellegrini opined the claimant's prognosis is heavily guarded due to his diagnosis and history of instability. It was also opined that the claimant would not be able to function effectively and appropriately within a competitive work environment. Due to his apparent psychotic features, he would not be able to keep up with a regular workday; carry out instructions in an effective and consistent manner. Interpersonally, he would likely display significant difficulty getting along and responding appropriately with coworkers and supervisors due to his underlying paranoia and seemingly poor social skills related to his condition (Exhibit 10F). The undersigned does not find these opinions persuasive, as the evaluation was conducted during a time when the claimant was not taking his medications. Rather, he was obtaining medication from a family member.

(Tr. 35).

The ALJ also found that Dr. Pellegrini's opinion was inconsistent with other mental status evaluations, including one conducted by Cheryl Kasprzak, Psy.D. in February 2018. (Tr. 651-54). The ALJ noted that Dr. Kasprzak's evaluation resulted in generally normal findings, with some exceptions, such as his thought processes "were notable at times for perseverative about his disorganized delusions," he had mild loosening of associations on occasion, and his attention and concentration were mildly distracted. (Tr. 36). The ALJ also found Dr. Pellegrini's opinion inconsistent with Plaintiff's activities of daily living, which included preparing meals, performing household chores, using public transportation, going out alone,

shopping, reading, using the internet, attending church, and attending to his personal care needs. (Tr. 36). The ALJ complied with the regulations in finding Dr. Pellegrini's opinion unsupported because Plaintiff was not on his prescribed medications at the time of the evaluations and inconsistent with other medical evidence of record.

Plaintiff argues that the ALJ erred in finding Dr. Pellegrini's opinion unpersuasive because the ALJ has the burden to show that if Plaintiff is noncompliant with treatment or a medication regimen, then the ALJ must also show that if Plaintiff had complied with the medication regimen, his ability to work would be restored, citing *Lucas v. Sullivan*, 918 F.2d 1567, 1571 (11th Cir. 1990). (Doc. 16, p. 13). In *Lucas*, the court found that "[t]he Secretary may deny SSI disability benefits if the Secretary determines that 1) the claimant failed to follow a prescribed course of treatment, and 2) her ability to work would be restored if she had followed the treatment." 918 F.2d at 1571. The court then found the ALJ erred in finding the plaintiff was not disabled without making both a finding that she was noncompliant with a medication regiment, *and* showing that compliance would restore a claimant's ability to work. *Id.* 1572.

*Lucas* is easily distinguishable. Here, the ALJ found Dr. Pellegrini's opinion unpersuasive based on Plaintiff not being compliant with his medication regimen at the time of the evaluation. The ALJ did not find Plaintiff not disabled solely for this

reason. Thus, the ALJ was not required to determine whether compliance with a medication regimen would restore Plaintiff's ability to work when considering Dr. Pellegrini's opinion. Substantial evidence supports the ALJ's consideration of Dr. Pellegrini's opinion.

### D.      Explanation of Benefits

Plaintiff contends that when SSA denied his application on reconsideration, it advised Plaintiff that he could perform work that requires only a very short, on-the-job training period. (Doc. 16, p. 16). Plaintiff argues that this job requirement equates to an SVP level 1, and the ALJ erred in not considering these records and in finding Plaintiff could perform jobs at an SVP 2 level. (Doc. 16, p. 16; Tr. 180. 186).

Explanations of Determination are prepared by disability examiners. *Martinez v. Kijakazi*, No. 8:20-cv-1025-TPB-AEP, 2021 WL 4482616, at *14 (M.D. Fla. Aug. 23, 2021), *report and recommendation adopted*, No. 8:20-cv-1025-TPB-AEP, 2021 WL 4478248 (M.D. Fla. Sept. 30, 2021) (citing SSA Program Operations Manual System ("POMS") DI 24501.001B(1)(d)(1)-(2)). "Notably, the SSA considers findings made by a state agency disability examiner at a previous level of adjudication about a medical issue, vocational issue, or the ultimate determination about whether a claimant is disabled to constitute evidence that is 'inherently neither valuable nor persuasive.'" *Id.* (citing 20 C.F.R. § 404.1520b(c)(2)). And under the regulations, an ALJ need not provide any analysis about how she considered such

evidence in rendering a decision. *Id.* (citing 20 C.F.R. § 404.1520b(c)). Thus, the ALJ was not required to consider the Explanations of Determination in rendering the decision and remand is not warranted.

### E.   Vocational Expert Testimony

Plaintiff argues that the vocational expert's testimony on his methodology in deriving the number of jobs is unknown and lacks reliability and the ALJ erred in relying on it. (Doc. 16, p. 20). Plaintiff claims that the job numbers proposed by the vocational expert far exceeded the job numbers from Bureau of Labor Statistics Crosswalk or Job Browser Pro. (Doc. 16, p. 19-21).

"At step five, an ALJ must ascertain whether [the] jobs [that a claimant can perform] exist[ ] in significant numbers in the national economy." *Viverette*, 13 F.4th 1309, 1318 (11th Cir. 2021) (quotations omitted) (citing *Biestek v. Berryhill*, 587 U.S. ___, 139 S. Ct. 1148, 1152 (2019)). Whether there are a significant number of jobs in the national economy is a factual issue to be determined by a judicial officer. *Id.* "Work which 'exists in the national economy' means 'work which exists in significant numbers either in the region where [the] individual lives or in several regions of the country.'" *Goode v. Comm'r of Soc. Sec.*, 966 F.3d 1277, 1280 (11th Cir. 2020) (citing 42 U.S.C. § 423(d)(2)(A)). The Social Security Administration approximates the number of positions that exist, whether vacant or filled, and without regard to a claimant's likelihood of being hired. *Id.* (citations omitted). An

ALJ may use a vocational expert or other specialist to assist in the step five determination. *Id.* Vocational experts may consult publications such as the DOT – even though it may be outdated – and may also consult other sources to obtain job numbers. *Id.*

At the hearing, Plaintiff did not object to the vocational expert's testimony, but did "defer to the brief." (Tr. 84). In the decision, the ALJ noted that Plaintiff refused to stipulate to the experience, knowledge, or qualifications of the vocational expert, but also noted that Plaintiff did not submit any written document objecting to the vocational expert's qualifications and failed to question the vocational expert at the hearing on his qualifications. (Tr. 19). The ALJ found the vocational expert fully qualified to serve and the Court agrees. (Tr. 19).

At the hearing, the ALJ afforded Plaintiff's counsel the opportunity to question the vocational expert, but he posed no questions. (Tr. 89). Relying on the vocational expert's testimony, the ALJ found that in the national economy, there were approximately 155,000 hand-packager positions, 133,000 marker positions, 17,000 inserter positions, and 34,000 bonding worker positions. (Tr. 38). Plaintiff argues the ALJ erred in relying on the vocational expert's testimony to deny Plaintiff's claim without verifying whether the job numbers were accurate.

According to the Eleventh Circuit, however, an ALJ need not independently verify job numbers.

> [T]to the extent that [Plaintiff] argues that the ALJ was required to independently verify a VE's testimony, we have held that the ALJ is only required to do so when there is a conflict between the VE's testimony and the DOT. Here, the conflict is between the number of available jobs the VE reported and the number of available jobs shown in the figures provided by the Bureau of Labor Statistics through its publication of the Occupational Employment Statistics ("OES"). Unlike the situation in which the VE's testimony conflicts with the DOT, this Court has not placed an affirmative duty on the ALJ to independently investigate a conflict between the VE's testimony and job availability figures provided by the Bureau of Labor Statistics in the OES.

*Webster v. Comm'r of Soc. Sec.*, 773 F. App'x 553, 555 (11th Cir. 2019). As a result, there was no requirement for the ALJ to have independently investigated and resolved conflicts between a vocational expert's testimony and information provided by Job Browser Pro or other sources, unless specifically raised by Plaintiff at the hearing before the ALJ, which it was not. Thus, based on Plaintiff failing to present evidence to the contrary and the vocational expert's uncontroverted testimony, the ALJ reasonably concluded that Plaintiff could perform the jobs listed and these jobs existed in significant numbers in the national economy.

Rather than raising this issue before the ALJ, Plaintiff attaches printouts of estimates of job numbers. (Doc. 16-1, 16-2, 16-3, 16-4). Plaintiff argues that these print outs show the job numbers to be far below those numbers provided by the vocational expert. (Doc. 26, p. 21-23). Even so, Plaintiff presented this raw data unaccompanied by any analysis or explanation from a vocational expert or other expert to put this raw data into context. . *See Davis v. Berryhill*, No. 17-cv-293-N,

2018 WL 2208432, at *7 (S.D. Ala. May 14, 2018). Without an expert to interpret the raw data or contradict the vocational expert's testimony, the ALJ reasonably relied on the vocational expert's testimony on the number of jobs in the national economy.

Lastly, Plaintiff argues that the jobs offered by the vocational expert are obsolete. (Doc. 16, p. 23). Plaintiff claims all of the listed jobs are obsolete or have obsolete duties, citing legal authority from other circuits. (Doc. 16, p. 23 (citing *Applefeld v. Comm'r, Soc. Sec. Admin.*, No. CV SAG-17-517, 2018 WL 1136571, at *5, n.1 (D. Md. Mar. 1, 2018) and *Chinn v. Berryhill*, No. 4:18-CV-00054-HBB, 2019 WL 1173374, at *6-9 (W.D. Ky. Mar. 13, 2019))). As cited above, the regulations still include the DOT as an acceptable source for job data evidence and the vocational expert's testimony complied with the regulations. *See* 20 C.F.R. § 414.1566(d). Substantial evidence supports the ALJ's decision at step five.

## III.   Conclusion

For the reasons discussed above, the Court finds that the decision of the Commissioner is supported by substantial evidence and the Commissioner applied the correct legal standard. The decision of the Commissioner is **AFFIRMED**. The Clerk of Court is directed to enter judgment consistent with this opinion, terminate all deadlines, and close the case.

**DONE** and **ORDERED** in Fort Myers, Florida on June 15, 2024.

DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties